IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLES D.,[1]

      Plaintiff,

  v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

      Defendant.

Case No.: 6:23-cv-01549-AN

OPINION AND ORDER

Plaintiff Charles D. brings this action seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). The Court has jurisdiction over plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the Court affirms the Commissioner's decision.

## BACKGROUND

**A.**    **Plaintiff's Application for DIB**

Plaintiff was born in March 1984, making him thirty-two years old on his alleged onset date of December 31, 2016. Tr. 15, 168. Plaintiff has a high school education and past relevant work experience as an intelligence specialist, commercial designer, and manager. Tr. 27, 199. In his application, plaintiff alleges disability due to mast cell activation syndrome, fatigue, post-traumatic stress disorder ("PTSD"), depression, anxiety, degenerative disc disease, arthritis, memory loss, and brain fog. Tr. 198. The Commissioner denied plaintiff's applications initially and upon reconsideration. Tr. 81-85, 94-98. On May 98, 2023, plaintiff appeared with counsel for a hearing before Administrative Law Judge ("ALJ") John

---

[1] In the interest of privacy, this opinion and order uses only the first name and the initial of the last name of the nongovernmental party in this case.

Sullivan. Tr. 34-61. On July 19, 2023, ALJ Sullivan issued a written opinion, finding plaintiff not disabled. Tr. 12-33. The Appeals Council denied plaintiff's request for review. Tr. 1-6. Plaintiff now seeks judicial review of the ALJ's decision.

**B.    Sequential Disability Evaluation**

The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step sequential procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the burden at steps one through four, and then the burden shifts to the Commissioner at step five. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

The five-step evaluation requires the ALJ to determine: (1) whether a claimant is "doing substantial gainful activity"; (2) whether the claimant has a "medically determinable physical or mental impairment," or combination of impairments, that is severe and either lasts at least a year or can be expected to result in death; (3) whether the severity of the claimant's impairments meets or equals one of the various impairments specifically listed by Commissioner; (4) whether the claimant's residual functional capacity ("RFC") allows the claimant to perform their past relevant work; and (5) whether, given the claimant's RFC, age, education, and work experience, the claimant can make an adjustment to other work that "exists in significant numbers in the national economy." 20 C.F.R. § 404.1520(a).

**C.    The ALJ's Decision**

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 31, 2016. Tr. 17. At step two, the ALJ determined that plaintiff suffered from the following severe, medically determinable impairments: morbid obesity, asthma, obstructive sleep apnea, mast cell activation syndrome, major depressive disorder, anxiety disorder, somatic symptom disorder, and PTSD. Tr. 17. At step three, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that meets or equals a listed impairment. Tr. 19. The ALJ then concluded that

plaintiff had the RFC to perform less than the full range of medium work as defined in 20 C.F.R. § 404.1567(c), with the following limitations:

> [T]he claimant is capable of lifting and/or carrying 50 pounds occasionally and 25 pounds frequently, sitting for 6 hours per 8 hour workday, standing or walking for 6 hours per 8 hour workday, and pushing/pulling within the same limits as lifting and carrying; he should avoid work at unprotected heights; he should never be exposed to moving mechanical parts; operation of a motor vehicle should not be part of his job duties; he should avoid exposure to dust, odors, fumes and pulmonary irritants; the claimant is capable of understanding, remembering, and carrying out simple, routine tasks; he is able to use judgment to make simple work-related decisions; he is able to occasionally interact with coworkers and the general public; in addition to normal breaks, the claimant is expected to be off-task five percent of the time, scattered over the course of an eight-hour workday.

Tr. 20-21.

At step four, the ALJ found plaintiff unable to perform any past relevant work.  Tr. 27.  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, such as Marker (DOT# 209.587-034), with 84,000 jobs available; Electronics Worker (DOT# 726.687-010), with 169,000 jobs available; and Inspector and Hand Packager (DOT# 559.687-074), with 90,000 jobs available.  Tr. 28.  Therefore, the ALJ concluded that plaintiff was not disabled between the alleged onset date, December 31, 2016, and June 30, 2020, his date last insured.  Tr. 29.

## STANDARD OF REVIEW

The district court may set aside the Commissioner's denial of benefits only if the ALJ's findings are "'not supported by substantial evidence or [are] based in legal error.'"  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).  Substantial evidence is defined as "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  The district court "cannot affirm the [ALJ's] decision 'simply by isolating a specific quantum of supporting evidence.'"  *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)).  Instead, the district court must consider the entire record.  *Id.*  Where the record as a whole can support either the grant

or denial of benefits, the district court "'may not substitute [its] judgment for the ALJ's.'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## DISCUSSION

Plaintiff argues the ALJ erred by discounting plaintiff's testimony without a clear and convincing reason for doing so or, alternatively, by failing to fully develop the record. As explained below, the Court finds that the ALJ did not err.

### A.    Symptom Testimony

Plaintiff contends the ALJ erred by discrediting plaintiff's testimony about the extent of the symptoms he suffers from mast cell activation syndrome, primarily, fatigue. Pl. Br., ECF [12], at 5-16. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; rather, the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)

(internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified that he suffered significant symptoms from his mast cell activation syndrome. Tr. 43. Starting in 2017, he began to experience "nausea, sickness, almost flu-like symptoms," fatigue, and weakness. Tr. 43. He would often have "GI symptoms, constantly in the bathroom multiple times a day. And just tired and run down and often having to, you know, take a nap." Tr. 43-44. Plaintiff further testified that his symptoms worsened with stress, causing him to be very physically sick. Tr. 48, 217. Plaintiff began treating these symptoms with medications in late 2017, which "stabilize[d] [the mast cell activation syndrome] so [he's] not having the flares and not feeling sick all the time." Tr. 45. Although the medication improves his symptoms, plaintiff testified he still suffers "overall fatigue and cognitive issues like memory fog." Tr. 45. And, despite the success of the medication, plaintiff testified that he still has flares if he has "any kind of stress or even environmental triggers" like pollen, propane fumes, or too much physical activity. Tr. 48.

Plaintiff described his "brain fog" as a "groggy kind of just foggy feeling" that causes problems with memory, planning ahead, and things like following a recipe when cooking. Tr. 45-46. Plaintiff tried to complete a part-time MBA program during the relevant period, but testified that the fatigue was "wearing [him] out," and that he could not handle the mental and physical toll of the work. Tr. 47-48. Plaintiff testified that his continuous positive airway pressure ("CPAP") machine helps with his obstructive sleep apnea, which is a separate medically determined impairment, but that it still contributes to his overall fatigue. Tr. 52. Plaintiff also testified that he needs to go slow and rest often, and that most things take twice as long. Tr. 213. He tries to walk the dogs daily but can only manage it on "good days"—*i.e.*, 2 or 3 times a week, Tr. 212.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms and did not identify evidence of malingering. Tr. 23. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 23.

Specifically, the ALJ found plaintiff's symptom allegations were inconsistent with objective medical evidence, plaintiff's treatment history, and that plaintiff's daily activities conflicted with his symptom allegations. Tr. 23.

The ALJ reasonably discounted plaintiff's allegations of limitations stemming from his mast cell activation syndrome as inconsistent with the record. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. § 404.1529(c)(2). At the hearing, plaintiff testified that fatigue, weakness, and "brain fog" were his most limiting symptoms. Tr. 47, 211. Specifically, plaintiff alleged his fatigue and cognitive issues made it impossible for him to complete even a part-time MBA, and that he has trouble following written and verbal instructions. Tr. 48, 216. In contrast to Plaintiff's allegations, the ALJ highlighted several medical tests that plaintiff underwent which show that mast cell diagnosis was not responsible for these symptoms. For example, laboratory and GI testing both returned normal results. Tr. 23-24, 783, 791, 805, 808, 815. Moreover, in contrast to plaintiff's allegations of memory impairment, difficulty focusing, and fatigue/brain fog, the ALJ noted that neurocognitive and neurological testing showed no cognitive deficits. Tr. 24-26, 45-46, 211, 791, 925-27. A brain MRI was normal. Tr. 24, 932. And plaintiff's full-scale IQ of 105 was in the average range. Tr. 24, 363. The ALJ further relied on the fact that plaintiff did not demonstrate distractibility or inattentiveness in mental status exams. Tr. 24-26, 365. These records all conflicted with plaintiff's allegations of more significant limitations and amount to substantial evidence supporting the ALJ's decision to discount plaintiff's testimony about the severity of his fatigue and cognitive symptoms.

Plaintiff urges the Court to adopt a different interpretation of the record but does not undermine the substantial evidence supporting the ALJ's decision. He argues the ALJ failed to provide sufficient specificity about what exact testimony the ALJ was discounting, and why. Pl. Reply 5-6 (citing, *inter alia*, *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015)). But the ALJ provided a thorough recitation of plaintiff's testimony, identified specifically which areas of testimony the ALJ found less-than-credible, and provided specific medical records that undermined that testimony. *See, e.g.*, Tr. 24 ("claimant alleges

6

significant cognitive decline…and brain fog.  However . . . [lists counter examples]").  This satisfies the ALJ's obligation to "show his work."  *Smartt*, 53 F.4th at 499.

Plaintiff also argues that the ALJ failed to address plaintiff's testimony about stress, his need to nap often, and inability to sustain.  Pl. Reply 4-6.  The ALJ does specifically address plaintiff's fatigue, which is the alleged cause of plaintiff's need to nap and inability to sustain, as well as the extent to which plaintiff's mast cell activation syndrome causes his alleged symptoms.  Tr. 23-24.  Plaintiff's arguments about the significance of the evidence the ALJ cites are an effort to have this Court re-weigh the evidence, which is beyond the scope of review.  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ.").  Even when there are two reasonable interpretations—plaintiff's and the ALJ's—the ALJ's interpretation must prevail.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld.").  Against that backdrop, even though plaintiff clearly interprets the evidence differently, he has not (and cannot) establish error by simply advancing a different interpretation of the medical evidence.

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with his own statements about daily activities.  Tr. 24.  Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony."  *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007).  The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements.  20 C.F.R. § 404.1529(c)(3)(i).  The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations.  *Ahearn*, 988 F.3d at 1117.  A claimant need not be utterly incapacitated to receive disability benefits, however, and sporadic completion of minimal activities is insufficient to support a negative credibility finding.  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)

(requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

The ALJ reasonably found that several of plaintiff's reported daily activities conflicted with his allegations about fatigue and inability to sustain. To discount a plaintiff's testimony, an ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn,* 495 F.3d at 639. Although plaintiff alleged significant fatigue and difficulty focusing, the ALJ noted plaintiff independently managed his own household, finances, and medical treatment. Tr. 26, 212-14. Further, the ALJ considered that plaintiff drove, grocery shopped independently, could walk two miles, and cared for his dogs and his son. Tr. 22, 26, 212, 214-15. The ALJ reasonably found that plaintiff's ability to perform these activities was inconsistent with his allegations of debilitating symptoms, specifically finding those activities "in contrast to the claimant's reports of significant impairment in memory, focus, and fatigue/brain fog." Tr. 26. Because the ALJ reasonably cited several activities that conflict with plaintiff's allegations about the limitations his physical symptoms cause, this was another clear and convincing reason for the ALJ to rely upon to discount plaintiff's testimony.

The medical records the ALJ cited also showed plaintiff's fatigue and cognitive symptoms improved with treatment, which was another clear and convincing reason to discount his symptom testimony. If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 404.1529(c)(3). The ALJ noted at the outset that plaintiff received treatment for his mast cell activation syndrome symptoms, including medications for mast cell disease, allergen immunotherapy, and treatment of environmental allergies. Tr. 23, 292. The ALJ also considered that plaintiff did not have significant complications from his mast cell disease, such as anaphylactic reaction, anemia, poor blood clotting, peptic ulcer disease, osteoporosis, or organ failure. Tr. 26. The ALJ further noted that plaintiff testified that his medications for mast cell disease had helped with fatigue. Tr. 22, 44-45. plaintiff reported that gastrointestinal issues and dizziness/balance issues improved with medication as well. Tr. 23, 287-88, 295-96. Likewise, plaintiff indicated that he had less anxiety and dizziness/vertigo on fluoxetine. Tr. 24, 779. Plaintiff's mood

improved after increasing his fluoxetine, with the record subsequently noting that his symptoms were "stable." Tr. 25, 996, 1001. The ALJ also noted that plaintiff reported that he felt better with improved fatigue and allergy symptoms when taking Vitamin D. Tr. 24, 775, 825, 829-36, 929-30, 943. Finally, a polysomnogram showed improved sleep apnea with use of a CPAP machine, further undermining plaintiff's fatigue testimony. Tr. 24, 745, 755. This was all substantial evidence supporting the ALJ's conclusion that plaintiff's fatigue and cognitive symptoms improved with treatment, and his decision to discount plaintiff's symptom allegations as a result.

Finally, the ALJ reasonably discounted plaintiff's testimony about cognitive issues stemming from both his mental and physical impairments that conflicted with his failure to follow providers' treatment recommendations to stop using marijuana. An ALJ may consider "unexplained or inadequately explained failure" to follow prescribed treatment when assessing symptom testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also* SSR 16-3p, 2016 WL 1119029 ("if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of [the] individual's symptoms are inconsistent with the overall evidence of record"). Here, the ALJ highlighted that plaintiff's treatment providers concluded that his marijuana use was causing some of his symptoms, advised him to stop on multiple occasions, and warned him about the possible causal effect between his marijuana use and symptoms. Tr. 18-27, 982, 1008, 1026. Based on this evidence, the ALJ reasonably concluded that plaintiff's noncompliance with his doctors' recommendations to stop marijuana use undermined his allegations of debilitating cognitive symptoms. Tr. 27. This was another clear and convincing reason the ALJ relied upon to discount plaintiff's testimony of the extent of his cognitive limitations.

**B.**       **Duty to Develop the Record**

Finally, plaintiff argues that the ALJ erred by not seeking a further consultative examination to determine if plaintiff suffered from any mental impairments.  Pl. Br. 19-20.

Although an ALJ "has an independent duty to fully and fairly develop the record," *Smolen*, 80 F.3d at 1288, this duty is only triggered by ambiguous evidence or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  Here, there was no ambiguous evidence in the record that triggered the ALJ's duty to further develop it.  Plaintiff points to no evidence that was ambiguous or difficult to interpret and the record was sufficient for the ALJ to evaluate plaintiff's application.  *See* Pl. Br. 16-17.  On this record, the ALJ did not have a duty to seek a further consultative examination.  *See Smolen*, 80 F.3d at 1288 (ALJ has no duty to develop the record if no medical evidence indicates that such an impairment might exist); *Mayes*, 276 F.3d at 459-60 (ALJ "had no duty to develop the record by diagnosing [claimant's] herniated discs" where claimant "did not provide the ALJ with any medical evidence indicating that she had herniated discs until after the ALJ hearing").  Accordingly, the ALJ did not err by failing further to develop the record with a retrospective consultative examination or a medical expert opinion.

## CONCLUSION

For the reasons given above, the Commissioner's decision is affirmed, and this case is dismissed. IT IS SO ORDERED.

DATED this 17th day of December, 2024

Adrienne Nelson
United States District Judge